IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-CR-00198

UNITED STATES OF AMERICA,

    Plaintiff,

v.

3.    Dustin Ullerich,

    Defendant.

## DUSTIN ULLERICH'S MOTION TO DISMISS: OUTRAGEOUS LAW ENFORCEMENT CONDUCT AND CRUEL AND UNUSUAL PUNISHMENTS

Dustin Ullerich, through his counsel Abraham Hutt of Recht Kornfeld, P.C., requests the Court to dismiss the Superseding Indictment against him in this case for outrageous law enforcement conduct which has caused him to suffer cruel and unusual punishment, on the following grounds:

    1.    Dusty Ullerich was shot and almost killed by law enforcement officers at the inception of this case.  He was shot while opening the front door to his home to allow the officers to enter and serve him the warrants they had obtained.

    2.    Law enforcement officers had improperly obtained a "no-knock" search warrant from a state court judge for Mr. Ullerich's home.  A motion challenging the issuance and execution of that warrant will be forthcoming in this case, based on the Court's Amended Scheduling Order (ECF 272).  That motion will detail, among other things, the factual, legal and veracity insufficiencies of the affidavit supporting the issuance of the warrants being served when Mr. Ullerich was shot.

3. The search warrant affiant, former Task Force Officer and Aurora Police officer Doug Pearson, knew that there were insufficient grounds to seek unannounced entry to Mr. Ullerich's home and knew that there were affirmatively good reasons **not** to seek a "no knock" warrant. Officer Pearson nonetheless chose to seek and obtain a no knock warrant and to participate in planning an especially violent assault on Mr. Ullerich's home. No part of the reasons Detective Pearson gave for requesting the no-knock warrant had anything to do with Mr. Ullerich specifically but were instead based on generalizations about motorcycle clubs. Those generalized reasons were stated to the exclusion absence of any specific information about Mr. Ullerich's nearly half century of peaceful, criminal-justice-system-free, family-supporting, business-operating life in this community.

4. On November 7, 2019, when the assault on Mr. Ullerich's home and person took place he was a 47-year-old small businessman with **no criminal history**. He still resides in the single-story home which police attacked on that day with his long-time significant other. He is a native and life-long resident of the Denver area. He is a well-known, respected tattoo artist and motorcycle enthusiast who also happens to be a decades long member of the Hells Angels Motorcycle Club.

5. The law enforcement officers who served the warrants at Mr. Ullerich's home were members of a so-called "SWAT" team. They formed a wholly unnecessary plan to serve the warrants at 4 in the morning that was especially violent: designed to destroy property and cause maximum fear to the inhabitants of the house. Part of that plan was to break multiple windows in the house and throw "flash-bang" grenades into it. This was accomplished prior to trying to blow open the front door. Immediately after

the windows were broken and the grenades exploded the SWAT team commander shouted orders to anyone in the house to come to the front door.  It was as Mr. Ullerich responded to all of that in his underwear to open the front door that the SWAT team fired a shotgun blast at the front doorway.   Mr. Ullerich having opened the front door, that blast hit him directly in the abdomen.

6. Mr. Ullerich nearly died as a result of the hole the shotgun blast made in his abdomen.  During the following two months in the hospital Mr. Ullerich had most of his large intestine removed.  He had to be placed in a medically induced coma.  On one Saturday morning during that time, his likely death was deemed so imminent that his medical team and law enforcement contacted undersigned counsel as his legal representative to help arrange for his family and friends to visit him one last time, despite the fact that he had been on a strictly guarded police hold at the Denver Health Intensive Care Unit and allowed visits only by his lawyer.  Counsel was present as Mr. Ullerich's mother, brother, wife and friends went into the room one by one to say their last goodbyes to his comatose body.

7. Miraculously, Mr Ullerich recovered.  However, he is permanently disabled and disfigured.   He continues to undergo constant treatment.  He is presently scheduling his next surgery (now nearly four years after being shot by police) which will take between five and eight hours, three to five days in the hospital and two to three months of recovery.

8. Multiple unlawful decisions by law enforcement officers led to them unjustifiably and illegally shooting Mr. Ullerich, who was unarmed, in his own home, behaving lawfully and opening the door for the officers when they shot him.   Those

decisions will be detailed more fully in a motion to suppress regarding the search warrant and established at the hearing the court has scheduled for suppression motions. Mr. Ullerich therefore requests that the Court not consider or rule on this motion until after that hearing.

9. A court may dismiss an indictment for outrageous governmental conduct leading up to the government's prosecution of the case. See, *U.S. v. Pedraza*, 27 F.3d 1515 (10th Cir. 1994). "In order to prevail, the defendant must show that the challenged conduct violates notions of 'fundamental fairness' and is 'shocking to the universal sense of justice.' *United States v. Harris, 997 F.2d 812, 816 (10th Cir. 1993)* (citations omitted). In determining whether the government's conduct is outrageous, we look to the totality of the circumstances. *Mosley, 965 F.2d at 910*." *U.S. v. Pedraza*, 27 F.3d 1515, 1521 (10th Cir. 1994). The United States Supreme Court has stated that dismissal of an indictment would be proper in "… a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *United States v. Russell, 411 U.S. 423, 431-32, (1973)*. Improperly seeking and obtaining a no-knock warrant and then serving it in an intentionally and unnecessarily violent fashion, including ordering an unarmed homeowner to his door as officers fire a shotgun at it, is that outrageous situation which calls for dismissal.

10. Mr. Ullerich's near death, permanent disfigurement and permanent disability inflicted by the law enforcement agents in this case constitutes the "cruel and unusual punishments" prohibited by the 8th Amendment to the United States Constitution. Consequently, when the record on the government's conduct has been

fully developed the Court should dismiss the indictment against Mr. Ullerich.

11.   Counsel has conferred with Assistant United States Attorney Garreth Winstead concerning this motion and he objects to it.

DATED at Denver, Colorado this   3rd   day of   April   2023   .

s/ Abraham V Hutt
Recht Kornfeld
Abraham V Hutt, #14137
1600 Stout Street, Suite 1400
Denver, Colorado  80202
(303) 573-1900

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing was served this   3rd   day of April, 2023 using the CM/ECF system which will send notification of such filing to all listed parties.

Leni Charles
Legal Assistant